UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DIONNE DAVIS, Individually and as Parent and Natural Guardian of O.D., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA and TOUCHETTE REGIONAL HOSPITAL, <br><br> Defendants. | Case No. 19-cv-1202-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion for partial summary judgment filed by the defendant United States of America (Doc. 28). Plaintiff Dionne Davis has responded (Doc. 29).

Davis brings this case under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) & 2671-2680. She seeks to recover for injuries she and her child, O.D., allegedly suffered from the medical negligence of personnel deemed to be employees of the defendant United States prior to and during O.D.'s July 31, 2016, delivery. Those personnel include physicians Dr. Darrell Ballinger and Dr. Kallie L. Harrison.

Attached to the Complaint is an affidavit from one of Davis's attorneys stating that he has reviewed the case with an appropriate health care professional and is of the opinion that there is reasonable and meritorious cause for bringing this lawsuit against the United States (Doc. 1-1). Attached to the attorney's affidavit is an October 9, 2019, physician report from an OB/GYN physician stating that, based on a review of the medical documents, he/she believes there is a reasonable and meritorious cause for bringing this action against the United States. The United States argues that the physician's report does not satisfy the requirements of the Illinois Healing

Art Malpractice Act, 735 ILCS 5/2-622, as to any part of Davis's claim against the United States based on Dr. Ballinger's conduct.  Davis claims the physician's report is broad enough to cover both physicians, especially since only a single defendant—the United States—is sought to be liable for both doctors' conduct.

I.      **Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  The court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.  Nevertheless, the "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture."  *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (internal quotations and citations omitted).

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial.  *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013).  Where the nonmoving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways.  It may present evidence that affirmatively negates an essential element of the nonmoving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the nonmoving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B).  *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169.  Where the moving

party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists.  *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168.  A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

The United States points to an absence of evidence that Davis can provide a physician's report attesting to the merit of her claim to the extent it is based on Dr. Ballinger's conduct.  Thus, it is incumbent on Davis to provide specific facts to show that she can provide the necessary report to support her FTCA claim.

**II.     Facts**

The parties agree that, during her pregnancy and delivery, Davis was under the care of physicians deemed employees of the United States by virtue of their work for the Public Health Service.  In the Complaint, Davis claims those doctors failed to manage and monitor her pregnancy and then negligently delivered O.D. without proper charting, assessment, or management.  O.D. suffered a brachial plexus injury that will rob him of a normal life and will be very costly.

3

The physician's report attached to the Complaint describes the reviewing physician's qualifications, and then turns to the "subject matter of this case, . . . the performance of the delivery of [O.D.]." (Doc. 1-1 at 3). He/she reviewed the records of Davis's prenatal visits as well as the records of O.D.'s birth and concluded that Davis has a reasonable and meritorious cause of action against the United States. The conclusion rested on events from Davis's presentation at Touchette Regional Hospital on July 30, 2016, for induction of labor, and the delivery by Dr. Harrison the following day. Dr. Harrison's records indicated a "standard vaginal delivery," but the reporting physician noted that other records indicated a vacuum was used during the delivery. However, there were no records of a position check of O.D. *in utero* to determine whether a vacuum was indicated, no record showing any justification for use of a vacuum, and no records indicating O.D. had experienced shoulder dystocia.[1]

The records showed that after O.D.'s birth, he had decreased movement of his right shoulder and elbow, weak right hand grip, and brachial plexus injury. The physician's report does not identify any specific negligent conduct preceding July 30, 2016. It states that the care for Davis described in the report—care during the delivery—was not consistent with the standard of care and that there was a reasonable and meritorious cause for filing a lawsuit based on that conduct.

## III.     Analysis

The Court starts with the law regarding FTCA claims for medical malpractice committed by federal employees in Illinois. The FTCA is a limited waiver of the Government's sovereign

---

[1] "Shoulder dystocia" occurs when "the baby's shoulder [gets] stuck after the head has been delivered." Mayo Clinic, Vacuum extraction, https://www.mayoclinic.org/tests-procedures/vacuum-extraction/about/pac-20395232 (visited Dec. 10, 2020).

immunity.  It gives federal courts:

> exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for . . . personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  Thus, where a private doctor committing medical malpractice in Illinois would be liable, so will the United States for the conduct of a federal employee doctor.

Cases alleging a private doctor committing medical malpractice in Illinois are subject to the Illinois Healing Art Malpractice Act, 735 ILCS 5/2-622.  That law requires plaintiffs making a claim of medical malpractice to consult with a health professional who must certify that the claim has merit.  735 ILCS 5/2-622(a).  This requirement takes the form of an affidavit and certificate of merit that must be filed with the complaint.  *Id*.  The affidavit must state that the plaintiff's attorney has consulted with a qualified health professional and that the health professional believes that the claim has merit.  *Id.*  The certificate of merit is the health professional's written report concluding that "there is a reasonable and meritorious cause for the filing of such action."  *Id.*  The report must clearly identify the reviewing health professional's reasons for coming to that conclusion.  *Id.*  The statute requires a separate physician's certificate of merit be filed for each defendant in the case.  735 ILCS 5/2-622(b).

The purpose of this requirement is to reduce the number of frivolous malpractice suits.  *Ebbing v. Prentice*, 587 N.E.2d 1115, 1117 (Ill. App. Ct. 1992).  Because the purpose is to reduce frivolous lawsuits rather than to ensure a lawsuit has a minimum likelihood of success or to provide adequate notice to a particular defendant, Illinois courts liberally construe the certificate of merit requirement in favor of the plaintiff as long as it achieves the statute's

5

purpose. *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000).  It has, for example, accepted as adequate a single report as to multiple defendants where the report discussed each defendant, the deficiencies in the medical care they provided, and the belief that there was a reasonable and meritorious cause against each.  *Id.* at 614 (citing *Neuman v. Burstein*, 595 N.E.2d 659, 664 (Ill. App. Ct. 1992)).

Compliance with § 2-622(a) is a substantive condition of liability under Illinois law, so it applies to FTCA malpractice litigation in federal court.  *Young v. United States*, 942 F.3d 349, 350 (7th Cir. 2019) (citing *Hahn v. Walsh*, 762 F.3d 617 (7th Cir. 2014)), *cert. denied,* No. 19-8587, 2020 WL 5882786 (U.S. Oct. 5, 2020).  Cases in federal court that lack the requisite affidavit and report are subject to summary judgment rather than dismissal pursuant to Federal Rule of Civil Procedure 12.  *Young*, 942 F.3d at 354.

The analysis in this case is somewhat complicated by the fact that, no matter how many federal employees might be involved in a case of medical malpractice, there is only a single defendant in an FTCA claim—the United States.  Therefore, the separate certificate of merit requirement for each defendant does not really fit.  Nevertheless, the Court can be flexible about applying rules intended for suits against private parties to suits against the United States where there is not a neat fit.  *See Belluomini v. United States*, 64 F.3d 299, 303 (7th Cir. 1995) (United States entitled to immunity defense under state workers' compensation law because a private employer would, even though United States did not operate under state workers' compensation law).  So here the Court asks whether the report provided by Davis serves the purposes of § 2-622(a)—to reduce frivolous malpractice litigation.

The United States views the question as doctor-based:  whether the report provides sufficient assurances that Dr. Ballinger's conduct is a reasonable cause to bring a meritorious

6

medical malpractice claim. In light of the fact that there is only one defendant—the United States—who will be liable for any federal employee physician's conduct, the Court believes it is more appropriate to ask a different, event-based question to determine whether the litigation is frivolous. The events are prenatal care and delivery care.

The first question then is whether the report provides sufficient assurances that a federal employee physician's *prenatal care* before Davis presented at the hospital on July 30, 2016, is a reasonable cause to bring a meritorious medical malpractice claim. The physician's report says nothing in detail about that care, addressing only the "subject matter of this case, . . . the performance of the delivery of [O.D.]." (Doc. 1-1 at 3). The only reference to prenatal care is the report's conclusory statement that the United States "[n]egligently and carelessly failed to properly manage and monitor Dionne Davis' pregnancy" (Doc. 1-1 at 5). This does not provide any of the detail required by § 2-622(a) to ensure a claim based on prenatal care is not frivolous. Accordingly, the report is insufficient to support a claim based on Davis's prenatal care, no matter which federal employee physician provided it.

The answer to the other relevant question—whether the report provides sufficient assurances that a federal employee physician's care *during delivery* is a reasonable cause to bring a meritorious medical malpractice claim—is equally as clear. The report discusses the care provided during delivery and its alleged shortcomings, specifically, the use of a vacuum without sufficient indications or notations why the vacuum was necessary or that a position check had been done before it was used. The report specifically names Dr. Harrison, but the record does not foreclose Dr. Ballinger's participation in the delivery in light of the paucity of written records. In fact, it makes no difference to the United States' liability which federal employee physicians were involved because it will be liable if either was at fault. Dr. Harrison's and Dr.

Ballinger's specific roles in the delivery can be explored in discovery.  For now it is enough to say that, because the report is sufficient to establish that a medical malpractice claim based on E.D.'s delivery is not frivolous, the report has served the purposes of § 2-622(a) as to that claim.  The claim based on the delivery will proceed.

In sum, the United States has carried its summary judgment burden of pointing to a lack of a medical report necessary to support a claim for medical malpractice based on Davis's prenatal care, and Davis has not pointed to any adequate report in support of that claim.  Accordingly, summary judgment is proper on that claim.

### IV.     Conclusion

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the United States' motion for partial summary judgment (Doc. 28).  The motion is **GRANTED** to the extent it seeks summary judgment on a medical malpractice claim based on the prenatal care Davis received.  The Court will, however, allow Davis 30 days from entry of this order to obtain a revised certificate of merit addressing her prenatal care and file a motion to reinstate the prenatal care claim.  The motion is **DENIED** to the extent it seeks summary judgment on a medical malpractice claim based on the care Davis received during delivery, regardless of the federal employee physician providing that care.  That claim is adequately supported by a report pursuant to § 2-622(a).  The Clerk of Court is **DIRECTED** to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:  December 11, 2020**

                   s/ J. Phil Gilbert
                   **J. PHIL GILBERT**
                   **DISTRICT JUDGE**